UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

FORTUNET, INC.,

      Plaintiff,

v.                                                                      2:06-CV-00393-PMP-PAL

GAMETECH ARIZONA CORP.,
GAMETECH INTERNATIONAL, INC.,               O R D E R

      Defendants.

      Presently before the Court is Defendants GameTech International, Inc. and GameTech Arizona Corporation's Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief May be Granted (Doc. #24), filed on July 21, 2006. Plaintiff filed FortuNet's Opposition to Defendants' Motion to Dismiss First Amended Complaint (Doc. #25) on August 10, 2006. Defendants filed a Reply (Doc. #31) on August 31, 2006.[1]

**I. BACKGROUND**

      Plaintiff FortuNet, Inc. ("FortuNet") is a Nevada corporation involved in the development and manufacture of electronic gaming devices, including bingo games. (Am. Compl. [Doc. #21] at 1-2.) Defendant GameTech International, Inc. ("GTI") is a Delaware corporation involved in the manufacture and sale of electronic gaming equipment. (Id. at

---

[1] Defendants previously filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted (Doc. #8) on April 20, 2006. This motion was directed to Plaintiff's original Complaint. Because Plaintiff subsequently filed an Amended Complaint, the Court will deny Defendants' first motion to dismiss as moot. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (noting that an amended pleading supersedes the original pleading).

1.) Defendant GameTech Arizona Corporation ("GTA") is a California and Arizona corporation, and is GTI's subsidiary. (Id. at 2.)

According to the Amended Complaint, Defendant GTI manufactures, distributes, advertises, and sells gaming devices in Nevada from its Nevada address, 900 Sandhill Road, Reno, Nevada. (Id. at 2-3.) On its website, Defendant GTI advertises its gaming devices, and advertises and distributes gaming devices under Defendant GTA's label. (Id.) Defendant GTA maintains a storage facility in Truckee, California. (Id. at 3.) However, Defendant GTA's corporate records in California and Arizona list the 900 Sandhill Road, Reno, Nevada address as the corporation's address. (Id.) According to the Complaint, GTA does not actually operate out of the Truckee, California location. (Id. at 3-4.) Neither Defendant holds a gaming license to manufacture, distribute, sell, or operate gaming devices in Nevada. (Id. at 3-4.)

Plaintiff's Amended Complaint asserts a cause of action under the Lanham Act, 15 U.S.C. § 1125(a), alleging Defendants:

> made false statements of fact in commercial advertisements placed in interstate commerce . . . about Defendants' products which actually deceived or have the tendency materially to deceive a substantial segment of their audience . . . [by] falsely represent[ing] that the goods and/or services offered are products and/or services of an entity licensed by the Nevada Gaming Commission . . . .

(Am. Compl. [Doc. #21] at 4.) Plaintiff asserts Defendants' conduct harmed Plaintiff through loss of competitive sales and hampered Plaintiff's competitive advantage because Plaintiff has expended resources to obtain a Nevada gaming license. (Id. at 5.)

The Amended Complaint also asserts a claim under the Nevada Deceptive Trade Practices Act ("NDTPA"), asserting Defendants' marketing materials have deceived the public into believing Defendants hold a Nevada gaming license. (Id. at 5.) Plaintiff contends that to avoid Nevada's gaming laws, Defendants have "engaged in a sham operation whereby they falsely contend that at least some of GTI gaming products are

2

manufactured and distributed by GTA from just across the Nevada-California border in Truckee, California." (Id.) However, the products actually are manufactured and distributed by Defendant GTI's Reno, Nevada office. (Id.) Plaintiff asserts this conduct has "intentionally misled the public into believing that one or both of [Defendants] holds a valid non-restricted Nevada Gaming License." (Id.)

Count three of the Amended Complaint asserts a claim under federal civil RICO, alleging:

> GTI created GTA as a sham corporation in order to more easily conduct its pattern of racketeering activity and to hide from authorities the illegal manufacturing, distributing and selling of gaming devices from Reno, Nevada by falsely contending that at least some of GTI gaming products are manufactured and distributed by GTA from just across the Nevada-California border in Truckee, California.

(Id. at 6.) The Amended Complaint alleges GTA has violated the Travel Act by manufacturing, distributing, and selling gaming devices from Reno, Nevada to customers in other states and in Nevada without first having obtained a Nevada gaming license. (Id. at 6-7.) According to the Amended Complaint, this activity constitutes a business enterprise involving gambling offenses in violation of Nevada state law. (Id. at 7.)

Finally, Plaintiff asserts a claim for common law false advertising and unfair competition. (Id. at 7-8.) Plaintiff alleges "through marketing materials, Defendants GTI and GTA have intentionally misled the public into believing that Defendants GTI and GTA hold a non-restricted gaming license in the State of Nevada." (Id. at 7.) Plaintiff also reiterates its prior allegation that Defendants manufacture gaming devices in Nevada but engage in a sham operation to make it appear those activities are occurring in California. (Id. at 8.)

Defendants move to dismiss the Amended Complaint, asserting there is no private right of action under Nevada's gaming laws, and Plaintiff cannot use the Lanham Act, federal civil RICO, the NDTPA, or the common law to evade the exclusive jurisdiction

3

of the Nevada Gaming Control Board and Commission over gaming licensing issues. Additionally, Defendants assert Plaintiff's Amended Complaint fails to state a claim under the Lanham Act because the only alleged misrepresentation in the Complaint is GTI's Nevada address. Defendants contend listing a correct Nevada address is not a representation that they are Nevada licensed. Furthermore, Defendants' website states their games may not be licensed in the purchaser's jurisdiction and Plaintiff has not alleged Defendants' use of a Nevada address deceived any consumers. Defendants also argue Plaintiff cannot state a claim under the NDTPA because the statute does not provide a private right of action for commercial competitors.

      Plaintiff responds this action does not fall within the Board or Commission's jurisdiction because Defendants concede they are not licensed and neither the Board nor the Commission have jurisdiction to determine Plaintiff's claims. Plaintiff also argues that although its civil RICO claim requires reference to Nevada's Gaming Control Act, a federal court's jurisdiction is not divested by a state agency's jurisdiction unless Congress so directs, and a Travel Act violation pursued through civil RICO is a federal violation governed by federal law. Plaintiff also argues Congress did not intend to route matters within this Court's jurisdiction through state agencies for primary decision making. Plaintiff further contends it states a cause of action under the Lanham Act because it alleges Defendants falsely represented they were Nevada licensed and this misrepresentation has or will mislead consumers. Plaintiff argues Defendants' representation that its devices are sold in Nevada falsely communicates the gaming devices are Nevada-licensed because gaming industry consumers reasonably would believe gaming devices manufactured, sold, and distributed in Reno, Nevada were done so by a Nevada-licensed entity. Additionally, Plaintiff asserts it has standing to allege a claim under the NDTPA because it is a victim of consumer fraud within the statute's meaning.

///

**II. LEGAL STANDARD**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiff's Complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). The issue is not whether the plaintiff ultimately will prevail, but whether he may offer evidence in support of his claims. See id. at 249 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995).

The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim. See Yamaguchi v. U.S. Dep't of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. at 47). All the Rules require is a "short and plain statement" that adequately gives the defendant "fair notice of what the plaintiffs' claim is and the grounds upon which it rests." Id. (citations and internal quotations omitted). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. See United States v. Howell, 318 F.2d 162, 166 (9th Cir. 1963).

///

///

**III. DISCUSSION**

           **A. Preemption by Gaming Control Board and Commission**

      Defendants move to dismiss the Amended Complaint with prejudice, asserting Plaintiff's claims are attempts to enforce Nevada gaming laws which do not contain a private cause of action and the enforcement of which lies within the Nevada Gaming Control Board and Commission's exclusive jurisdiction. Plaintiff responds that it is not seeking to enforce Nevada gaming laws, rather it is bringing claims under Nevada and federal laws seeking remedies which the Board and Commission cannot provide.

      Nevada has enacted a comprehensive statutory scheme for regulating gaming. See Nev. Rev. Stat. Tit. 41, Ch. 463. As part of that scheme, Nevada created and vested enforcement authority in the Board and Commission, with limited judicial review. See Nev. Rev. Stat. §§ 463.022, 463.030, 463.140-.144, 463.310-.318. Specifically, Nevada has vested the Board and Commission with the authority to inspect and examine premises where gaming occurs or where gaming devices or equipment are manufactured, sold, or distributed; seize and impound any such equipment or records for inspection; demand access to and inspect all books and records of an applicant or licensee; and investigate any suspected criminal violation of the gaming laws. Nev. Rev. Stat. § 463.140(2), (4). Nevada's regulatory scheme also requires the Board to investigate license applicants' qualifications and to make suitability recommendations. Nev. Rev. Stat. § 463.1405(1)-(3). The Commission has "full and absolute power and authority" to deny, limit, condition, revoke, or suspend any license or fine any licensee "for any cause deemed reasonable by the Commission." Nev. Rev. Stat. § 463.1405(4).

      Furthermore, the Commission and Board are vested with the power to initiate enforcement proceedings, including civil actions to collect any amounts due to the State as well as disciplinary actions. Nev. Rev. Stat. §§ 463.141, 463.142, 463.310. Based on this comprehensive scheme, the Nevada Supreme Court has ruled that Nevada's gaming laws

6

are not enforceable through a private cause of action under Nevada state law. Sports Form, Inc. v. LeRoy's Horse & Sports Place, 823 P.2d 901, 903-04 (Nev. 1992).

However, this Court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Defendants cite no authority that a state's decision to vest exclusive law enforcement authority in a state agency precludes a plaintiff from bringing a properly pled claim based on federal law where the plaintiff's cause of action may require the federal court to examine issues within the state agency's expertise. Such a rule would be inconsistent with the Supremacy Clause of the United States Constitution absent federal law deferring to state agency expertise. U.S. Const., art. VI, cl. 2. Additionally, the United States Court of Appeals for the Ninth Circuit has suggested, in dicta, that federal courts should not "'route' issues to a state agency for resolution" unless Congress so intended. Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co., 99 F.3d 937, 949 n.12 (9th Cir. 1996). Defendants cite no authority that Congress intended Nevada state law's assignment of exclusive authority to the Nevada Gaming Control Board and Commission to trump federal civil RICO or Lanham Act claims based on possible Nevada gaming law violations.

Furthermore, to state a claim under the federal civil RICO statute, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" Ove v. Gwinn, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18 U.S.C. § 1964(c)). "Racketeering activity" includes violations of the Travel Act, 18 U.S.C. § 1952. 18 U.S.C. § 1961(1)(B). The Travel Act prohibits travel in interstate commerce with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity . . . ." 18 U.S.C. § 1952(a). "Unlawful activity" includes "any business enterprise involving gambling . . . in violation of the laws of the State in which they are committed or of the United States . . . ." 18 U.S.C. § 1952(b)(i)(1).

7

Federal civil RICO incorporates the Travel Act, which in turn incorporates state law. Accordingly, where a federal civil RICO claim is based on a Travel Act violation which itself is based on a violation of state law, the state law violation becomes an element of the federal cause of action. Cf. United States v. Bertman, 686 F.2d 772, 774 (9th Cir. 1982) (discussing this aspect of a criminal offense under the Travel Act). "Although state law becomes the focus of this inquiry, the gravamen of a charge under § 1952 is the violation of federal law" and "[r]eference to state law is necessary only to identify the type of unlawful activity in which the defendants intended to engage." United States v. Polizzi, 500 F.2d 856, 869 (9th Cir. 1974) (quotations and internal citation omitted).

The Ninth Circuit has upheld criminal convictions under the Travel Act based on a federal court's analysis of Nevada gaming laws without any indication that it improperly was treading on the Nevada Board or Commission's exclusive jurisdiction. In Polizzi, the defendants were accused of having undisclosed interests in certain Nevada casinos thereby violating the Travel Act. Id. at 868. The defendants argued that because the corporation which leased and operated the casino had a valid license under Nevada law, Nevada gaming law violations could not support their convictions under the Travel Act. Id. at 870. The Ninth Circuit ruled that although the Government could not rely on one subsection of a Nevada gaming statute because the corporation initially was licensed properly, another subsection of the same statute supported a Travel Act violation because defendants received gambling proceeds without having procured and maintained licenses as required by Nevada law. Id. at 870-72. The Ninth Circuit held the defendants' acts "were prohibited by state law." Id. at 872.

Two other United States Courts of Appeals have considered criminal Travel Act violations based on Nevada gaming laws and likewise expressed no reservation upholding convictions based on a federal court's review of whether certain activity violated Nevada gaming laws. In United States v. DeLuna, the Eighth Circuit held the defendants violated

Nevada state gaming laws by conducting gambling operations without licenses and by receiving gambling proceeds without licenses. 763 F.2d 897, 906-07 (8th Cir. 1985), overruled on other grounds recognized by United States v. Gardner, 447 F.3d 558, 560 (8th Cir. 2006) (regarding the right to confront witnesses under the Sixth Amendment's Confrontation Clause). The Eighth Circuit construed Nevada gaming law and held that even though the Nevada gaming statutes did not have a specific criminal penalty for these violations, Nevada gaming law had a "catch-all" provision which made such activity criminal. Id. at 907.

Similarly, in United States v. Goldfarb, the defendants argued violations of Nevada gaming regulations, as opposed to statutes, could not form the basis of a Travel Act offense. 643 F.2d 422, 428-29 (6th Cir. 1981). The Sixth Circuit reviewed Nevada gaming law, including the power of the Board and Commission, and held the lower court did not err by instructing the jury that Nevada gaming regulations had the force of law, but to be guilty of a Travel Act offense, the defendant must have violated a Nevada statute and not a regulation alone. Id. at 428-30.

Although these cases involved criminal violations of the Travel Act rather than civil RICO actions, this distinction is immaterial. The federal civil RICO statute incorporates the Travel Act which defines offenses thereunder by reference to violations of state law. A federal court properly determines whether a party has committed a Travel Act offense based on a violation of Nevada state gaming laws even though Nevada has delegated exclusive authority to the Board and Commission for making those determinations under Nevada state law. Accordingly, determining whether a Travel Act offense constitutes racketeering activity under federal civil RICO likewise is a question for the federal district court that is not precluded by Nevada state law's delegation of authority to its own state agency for enforcement of state law. Any other result would frustrate federal civil RICO law and violate the Supremacy Clause by permitting states to remove

certain activities from federal civil enforcement without Congress' consent by delegating exclusive regulatory authority to state agencies.

Additionally, Plaintiff's Lanham Act claim does not require the Court to determine whether Defendants have violated Nevada gaming laws. Plaintiff asserts Defendants violated the Lanham Act by falsely representing they have Nevada gaming licenses by manufacturing, selling, and distributing gaming devices from a Nevada address. Plaintiff contends Defendants' use of a Nevada address deceives customers into believing Defendants have Nevada gaming licenses when they do not. Plaintiff's Amended Complaint challenges the allegedly deceptive nature of the representation, not whether Nevada law actually required Defendants to have a license. See Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1253-54 (10th Cir. 1999) (holding plaintiff stated Lanham Act claim that competitor falsely represented it had obtained federal agency approval for its claims about its product's efficacy even though federal agency had exclusive jurisdiction over product labeling under pesticide act). The Court therefore will deny Defendants' motion to dismiss counts one and three of the Amended Complaint.

Although Plaintiff's federal claims are not precluded, Plaintiff's NDTPA and common law unfair competition claims are based on state law. Nevada's preclusion of a cause of action based on Nevada gaming laws therefore may bar these claims. Whether Plaintiff's claims are barred is determined by examining the claims' substance. See Nevada Power Co. v. Eighth Judicial Dist. Court of Nev., 102 P.3d 578, 586 (Nev. 2004) (to determine whether complaint's claims were within the Public Utility Commission's exclusive jurisdiction or within the district court's original jurisdiction, court must look to the substance of the claims).

In count two of the Complaint alleging a violation under the NDTPA, Plaintiff alleges that "to avoid the applicable Nevada gaming laws, Defendants GTI and GTA have engaged in a sham operation whereby they falsely contend that at least some of GTI gaming

products are manufactured and distributed by GTA from just across the Nevada-California border in Truckee, California." (Am. Compl. at 5.)  Plaintiff alleges that Defendants manufacture and distribute some of the devices out of GTI's Reno, Nevada office.  (Id.)  Plaintiff alleges "Defendants GTI and GTA have intentionally misled the public into believing that one or both of them holds a valid non-restricted Nevada Gaming License." (Id.)  Plaintiff's common law unfair competition and false advertising claim is similar, alleging that "to avoid the applicable gaming laws, Defendants GTI and GTA have engaged in a sham operation whereby they falsely contend that at least some of GTI['s] gaming products are manufactured and distributed by GTA from just across the Nevada-California border in Truckee, California," when in fact Defendants manufacture and distribute at least some of GTI's products from Reno, Nevada, and Defendants have misled the public into believing one or both Defendants have Nevada gaming licenses.  (Id. at 7-8.)  This claim also alleges Defendants, through their marketing materials, intentionally have misled the public into believing Defendants hold a Nevada gaming license.  (Id. at 7.)

Plaintiff's NDTPA claim and its common law unfair competition claim[2] fall within the exclusive authority of the Board and Commission.  The Amended Complaint specifically alleges Defendants are evading applicable Nevada gaming laws.  It is unclear from the Amended Complaint's allegations how Defendants' alleged conduct of manufacturing products in Nevada while publicly claiming they manufacture the products in California misleads consumers into believing Defendants have a Nevada gaming license. Rather, these claims allege Defendants are evading applicable gaming law by

---

[2] Count four of the Amended Complaint asserts a claim for "Common law False Advertising and Unfair Competition." (Am. Compl. at 7.)  The first allegation in this count alleges Defendants' marketing materials have misled the public into believing Defendants have Nevada gaming licenses. The second allegation refers to Defendants' alleged sham operation of manufacturing gaming devices in Nevada but making it appear those activities are occurring in California.  (Id. at 8.)  These appear to be two separate theories.  Accordingly, the Court will refer to the first allegation as common law false advertising and the second allegation as common law unfair competition.

11

manufacturing gaming products in Nevada without a license but making it appear as if the activity is occurring in California to circumvent Nevada gaming law requirements. These allegations fail to state a claim under Nevada law because Nevada does not recognize a private cause of action for gaming law violations. The Court therefore will dismiss with prejudice Plaintiff's claim under the NDTPA (count two) and Plaintiff's common law unfair competition claim (part two of count four).

However, Plaintiff's common law false advertising claim consists of the allegation that Defendants have misled the public through its marketing materials by indicating Defendants have a Nevada license. Like Plaintiff's Lanham Act claim, this claim does not depend on enforcing Nevada gaming laws. Instead, it seeks to hold Defendants responsible for alleged misrepresentations to customers regardless of whether such conduct also violates Nevada's gaming laws. Defendants state parenthetically that Nevada does not recognize this cause of action, but Defendants offer no authority or argument that Nevada would not recognize common law false advertising. Nevada generally has adopted the common law. Nev. Rev. Stat. § 1.030 ("The common law of England, so far as it is not repugnant to or in conflict with the Constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of decision in all the courts of this state."). Absent specific argument and authority to the contrary, the Court will deny Defendants' motion to dismiss Plaintiff's state common law false advertising claim (part one of count four) on this basis.

**B. Lanham Act**

Defendants move to dismiss Plaintiff's claim under the Lanham Act, arguing the only representation Plaintiff has identified is Defendants' use of a Nevada address. Defendants assert this representation is not false because it is Defendants' correct address, it is not likely to deceive the public because Defendants never state they are Nevada-licensed, and their website contains a disclaimer that its products may not be licensed in the

purchaser's jurisdiction.  Plaintiff responds that a representation that is literally true may be false by implication.  Additionally, Plaintiff asserts it adequately has alleged that Defendants have or will deceive consumers because customers will assume Defendants have a Nevada gaming license because Defendants manufacture, sell, and distribute gaming devices from a Nevada address.  Further Plaintiff notes that although the website indicates Defendants' products may not be licensed in the purchaser's jurisdiction, it is silent on whether Defendants' products are licensed in Defendants' own jurisdiction of Nevada.

The Lanham Act "prohibits the use of false designations of origin, false descriptions, and false representations in the advertizing and sale of goods and services." Jack Russell Terrier Network of N. Ca. v. American Kennel Club, Inc., 407 F.3d 1027, 1036 (9th Cir. 2005).  Pursuant to the Lanham Act, any person who believes he has been damaged may bring a civil action against:

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a).  To establish a Lanham Act claim, the plaintiff must show: "1) [the defendant] made false or deceptive advertisements and representations to customers; 2) those advertisements and representations actually deceived a significant portion of the consuming public; and 3) [the plaintiff] was injured by [the defendant's] conduct." William H. Morris Co. v. Group W, Inc., 66 F.3d 255, 257 (9th Cir. 1995).

///

///

"'[T]he Lanham Act encompasses more than blatant falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement.'" Id. at 257-58 (quoting Vidal Sassoon, Inc. v. Bristol-Myers Co., 661 F.2d 272, 277 (2d Cir. 1981) (internal quotation omitted)). However, if a statement is not literally false and is misleading only in context, "proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." Id.

At the motion to dismiss stage, and taking all allegations in the Complaint as true, it does not appear beyond doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Plaintiff alleges Defendants made false representations to customers through a website by advertising they manufacture, sell, and distribute gaming devices from a Nevada address. Plaintiff asserts that although the address is correct for Defendants, by implication it falsely communicates to customers that Defendants are Nevada-licensed. Plaintiff further alleges the representations "actually deceived or have the tendency materially to deceive a substantial segment of their audience so as to influence the decision to purchase GTI/GTA gaming devices . . . [by] falsely represent[ing] that the goods and/or services offered are products and/or services of an entity licensed by the Nevada Gaming Commission . . . ." (Am. Compl. at 4.) Finally, Plaintiff alleges Defendants' conduct has damaged Plaintiff through "loss of competitive sales to GTI/GTA and hampering Plaintiff's competitive advantage against GTI/GTA because Plaintiff's competing devices are manufactured and/or sold by a Nevada-licensed entity." (Id. at 4-5.) Defendants' argument that no customers have been deceived by the address is a question of fact on the merits and is not suitable for determination on a motion to dismiss. The Court therefore will deny Defendants' motion to dismiss Plaintiffs' Lanham Act claim.

///

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted (Doc. #8) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief May be Granted (Doc. #24) is hereby GRANTED in part and DENIED in part. The motion is granted in that count two (NDTPA) and part two of count four (common law unfair competition) of Plaintiff's Amended Complaint (Doc. #21) are hereby dismissed with prejudice. The motion is denied in all other respects.

DATED:   October 24, 2006

_____
PHILIP M. PRO
Chief United States District Judge